IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

FILED
U.S. DIST ICT COURT
AUG ...

2009 JUL 29  AM 8: 31

CLERK _____
SO. DIST. OF GA.

HUBERT ARTIS, JR.,           )
                             )
        Petitioner,          )
                             )
    v.                       )        CV 108-105
                             )        (Formerly CR 106-31)
UNITED STATES OF AMERICA,     )
                             )
        Respondent.          )

---

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Petitioner Hubert Artis, Jr., an inmate incarcerated at the United States Penitentiary

in Inez, Kentucky, has filed with this Court a motion under 28 U.S.C. § 2255 to vacate, set

aside, or correct his sentence. The government has filed its response. On June 16, 2009, the

Court held an evidentiary hearing, at which time Petitioner and his former counsel, Zane

Patrick Leiden, offered testimony. For the following reasons, the Court **REPORTS** and

**RECOMMENDS** that Petitioner's § 2255 motion be **DENIED**, that this civil action be

**CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

### I.  BACKGROUND

In a superceding indictment issued on April 12, 2006, a federal grand jury indicted

Petitioner and his co-defendant Timothy Worthen ("Worthen") on the following charges:

(1) conspiracy to possess with intent to distribute and conspiracy to distribute over five (5)

kilograms of cocaine hydrochloride, in violation of 21 U.S.C. § 846, and (2) possession with

intent to distribute over 500 grams of cocaine hydrochloride, in violation of 21 U.S.C. § 841(a)(1). See United States v. Artis, CR 106-31, doc. no. 52 (S.D. Ga. Apr. 12, 2006) (hereinafter "CR 106-31"). Attorney Zane Patrick Leiden was appointed to represent Petitioner, see CR 106-31, doc. no. 13, and the case proceeded to trial, where Petitioner and Worthen were found guilty on both counts, with the jury specially finding that the conspiracy involved more than 5 kilograms of cocaine hydrochloride, id., doc. no. 125. On April 30, 2007, the Honorable Dudley H. Bowen, Jr., United States District Judge, sentenced Petitioner, who had two prior felony drug convictions, see Presentence Investigation Report, ¶ 53, to two life terms of imprisonment, to be served concurrently. CR 106-31, doc. nos. 140, 141.

Petitioner appealed his conviction to the Eleventh Circuit, raising the following claims of error:

(1)     there was insufficient evidence to establish that Petitioner and Worthen had engaged in a conspiracy to possess and distribute cocaine;

(2)     there was insufficient evidence for the jury to conclude that the conspiracy involved more than 5 kilograms of cocaine hydrochloride; and

(3)     the district court erred in permitting the government to introduce Worthen's proffer statements as impeachment and rebuttal evidence at trial.

See generally United States v. Artis, 261 Fed. App'x 176 (11th Cir. 2008) (*per curiam*).

Petitioner's trial counsel, Mr. Leiden, also represented him on appeal. In an unpublished *per*

*curiam* opinion, the Eleventh Circuit rejected Petitioner's arguments and affirmed his convictions. Id. at 182.

Petitioner then timely filed the instant § 2255 motion,[1] alleging that Mr. Leiden was ineffective in the following respects:

(1)    for failing to advise him that, due to his prior felony drug convictions, he faced a mandatory life sentence if convicted at trial;

(2)    for failing to object at trial to the proffer testimony of Petitioner's co-defendant that referenced drug activities which Petitioner alleges did not involve him;

(3)    for failing to object to the trial court's jury instructions, specifically that

    (a)    the instructions were so broadly stated that his co-defendant's conduct could be imputed to him, and

    (b)    the jury instruction regarding computation of the drug amount was incorrect;

(4)    for failing to challenge the trial court's jury instructions on appeal;

(5)    for failing to attempt to obtain a lesser sentence and dismissal of the first count of the indictment; and

(6)    for failing to challenge a correction to a trial court transcript on appeal.

(See generally doc. nos. 2, 6). Respondent contends in its answer to Petitioner's § 2255 motion that these claims are either procedurally defaulted or without merit, (see doc. nos. 10, 11), and relies on correspondence between Petitioner and Mr. Leiden in responding to several

---

[1]Petitioner was granted permission to amend his § 2255 motion, and Respondent was directed to file a comprehensive response to the original and amended motion. (See doc. nos. 6, 7). For ease of reference, both the original motion and the amendment are referred to herein as one motion.

of Petitioner's claims, (see doc. no. 10, Exs. A-R). While several of Petitioner's claims are contradicted by the record, as discussed in more detail below, the Court held an evidentiary hearing on June 16, 2009, to determine whether Mr. Leiden (1) failed to advise Petitioner of the maximum possible sentence, and (2) failed to attempt to obtain a lesser sentence and dismissal of the first count of the indictment. Petitioner was represented at the hearing by appointed counsel Troy A. Lanier.

## II. DISCUSSION

### A. Applicable Rules Explained

In addressing Petitioner's ineffective assistance of counsel claims, the Court begins with the proposition that these claims are not procedurally barred because they were not raised on direct appeal. Indeed, ineffective assistance of counsel claims may be raised for the first time in collateral proceedings. Massaro v. United States, 538 U.S. 500, 509 (2003). Thus, although the ineffective assistance of counsel claims are not barred, Petitioner faces another procedural hurdle in this case. Specifically, claims that are raised and rejected on direct appeal are generally precluded from reconsideration in a § 2255 motion. United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994); Edwards v. United States, 795 F.2d 958, 961 (11th Cir. 1986); United States v. Rowan, 663 F.2d 1034, 1035 (11th Cir. 1981) (*per curiam*).

As the Seventh Circuit noted, "[W]e do not see how a federal prisoner--who must file his motion for relief under 2255 in the very court that convicted him--can be allowed to do so if all he is doing is rehashing a claim that had been rejected on the direct appeal." White v. United States, 371 F.3d 900, 902 (7th Cir. 2004). Nor will the Court reconsider a

previously raised claim where it is merely a re-characterization of an issue raised on direct appeal.[2] Nyhuis, 211 F.3d at 1343. Thus, to obtain review in this § 2255 proceeding of a previously raised claim, Petitioner must show an intervening change in law since his appeal was decided and that a "complete miscarriage of justice" would occur if the claim is not considered in these proceedings. Davis v. United States, 417 U.S. 333, 346-47 (1974).

This means that to the extent Petitioner bases his ineffective assistance of counsel claims on arguments the Eleventh Circuit has already determined to be without merit, this Court will not review, revisit, or otherwise disturb those determinations. This collateral proceeding is not a new trial.[3] A jury convicted Petitioner after a full exposition of evidence. Petitioner then had the opportunity to present his arguments concerning alleged errors in the trial court when he filed his appeal in the Eleventh Circuit Court of Appeals. While this Court recognizes that Petitioner did not present, and indeed was not required to present, his current ineffective assistance of counsel claims on appeal, to the extent the factual bases underlying his ineffective assistance claims were decided adversely to Petitioner on appeal,

---

[2]Stated another way, simply putting a new name on an old issue will not suffice.

[3]The Seventh Circuit explained the narrow parameters under which a conviction may be reviewed in collateral proceedings as follows: "28 U.S.C. § 2255 . . . limits relief to an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." Borre v. United States, 940 F.2d 215, 217 (7th Cir. 1991) (internal quotation marks omitted); see also United States v. Rosch, Nos. 89 CR 592 and 94 C 3663, 1995 WL 680463, at * 5 (N.D. Ill. Nov. 13, 1995) ("[Defendant] argues essentially that the court erroneously relied upon . . . allegedly perjured testimony . . . in determining the restitution award. The Defendant is attempting to relitigate this issue which has already been previously decided. The recreation of the issues explored at the sentencing hearing and [Defendant's] request to reweigh this evidence is inappropriate on a § 2255 motion.").

they will not be revisited here. With these principles in mind, the Court turns its attention to the standard for establishing ineffective assistance of counsel.

To establish ineffective assistance of counsel, Petitioner must meet a two-part test. Petitioner first must show that "counsel's representation fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 688 (1984). In applying this test, reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance[.]" Id. at 689; see also Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing "that petitioner was not entitled to error-free representation"). "A petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Second, Petitioner must establish prejudice by showing "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687.

As to appellate counsel, the Court's analysis under Strickland is further guided by the principle that appellate counsel is not ineffective when he fails to raise a frivolous argument on appeal. United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992). Stated another way, appellate counsel is not ineffective for failing to raise claims "reasonably considered to be without merit." Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984). Neither does the Sixth Amendment require appellate advocates to raise every non-frivolous issue. Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991).

In applying the Strickland components outlined above, "[a] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the

defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Smith v. Wainwright, 777 F.2d 609, 616 (11th Cir. 1985). Under the prejudice component, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome . . . ." Id. at 616 (citing Strickland, 466 U.S. at 694-95). For as the Eleventh Circuit has ruled, an affirmative showing of prejudice that would undermine the results of the proceedings is necessary because "'attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004).

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion -- though the presumption is not insurmountable -- is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). As the Eleventh Circuit has succinctly stated, "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*). "[C]ases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Id. at 1511.

Because determining whether Petitioner suffered prejudice hinges upon the validity of the underlying claims, Cross v. United States, 893 F.2d 1287, 1290 (11th Cir. 1990) and Miller v. Dugger, 858 F.2d 1536, 1538 (11th Cir. 1988), the Court will review the merits of the claims which form the basis of Petitioner's ineffective assistance allegations.

**B.      Application to the Instant Case**

### 1.      Alleged Failure to Explain Possible Sentence, Negotiate Lesser Sentence, and Obtain Dismissal of Count One

The Court first discusses those claims addressed at the evidentiary hearing. Petitioner alleges in Ground 1 of his § 2255 motion that counsel was ineffective for failing to advise him that due to his prior felony drug convictions, he faced a mandatory life sentence if convicted at trial. This claim is related to Petitioner's claim presented in Ground 5 that counsel was ineffective for failing to attempt to obtain a lesser sentence for him, as well as dismissal of the first count of the indictment, and thus these claims are considered together here.

At the hearing, Mr. Leiden testified that in his opinion, Petitioner probably had below average intelligence and had trouble reading and writing. Accordingly, he engaged in both written and oral communication with Petitioner during the course of his representation. Mr. Leiden went on to state that given criminal defendants' general propensity to focus on the minimum possible sentence before deciding whether to plead guilty or go to trial, it would be important and reasonable for him to emphasize the maximum sentence Petitioner faced.

Mr. Leiden also confirmed the authenticity of several letters sent to Petitioner, in which Mr. Leiden explained the charges against him and the maximum possible sentences

Petitioner faced.[4,5] Mr. Leiden testified that the charges and the penalties changed throughout the course of his representation of Petitioner, first when the government filed a superceding indictment, and for a second time when the government filed an enhanced sentencing information demonstrating that Petitioner had two prior felony drug convictions. See CR 106-31, doc. nos. 52, 74. Notably, Mr. Leiden testified that the government had offered to allow Petitioner to plea to the first count of the original criminal complaint to avoid the filing of the superceding indictment charging Petitioner with more serious offenses, but Petitioner rejected that plea offer.

That said, according to Mr. Leiden, Petitioner only faced a mandatory life sentence once the enhanced sentencing information was filed, and thus he did not convey that information to Petitioner until that time. Therefore, as Mr. Leiden testified, while his initial letters to Petitioner only referenced a possible life sentence (as opposed to a mandatory life sentence) and other possible penalties,[6] on June 12, 2006, three days after the government filed the enhanced sentencing information, Mr. Leiden wrote a letter to Petitioner explaining

---

[4]The Court notes that by alleging ineffective assistance of counsel, Petitioner has waived any privilege that might apply to the contents of the correspondence between him and Mr. Leiden. See Johnson v. Alabama, 256 F.3d 1156, 1178 (11th Cir. 2001) (finding that a petitioner alleging ineffective assistance of counsel had "put at issue - and thereby waived - any privilege that might apply to the contents of his conversations" with his attorneys).

[5]As discussed more fully below, these letters also documented the numerous plea deals offered by the government at various stages of the case.

[6]For example, Mr. Leiden explained in a letter to Petitioner dated April 6, 2006 that "[i]f sentenced, you would face a minimum of twenty years, and potentially a life sentence. The life sentence would be a possibility based upon the fact that you have two prior drug-related felony convictions." (Doc. no. 10, Ex. A). In another letter dated May 3, 2006, Mr. Leiden explained, "You now face a minimum of 30 years, up to a maximum of life imprisonment, on the conspiracy count which was added to the indictment." (Id., Ex. B).

that he would now be facing a mandatory life sentence if he was convicted at trial.[7] While Mr. Leiden admitted that there was no other written correspondence explaining to Petitioner that he faced a mandatory life sentence or the nature of such a sentence, he was adamant that he explained this to Petitioner several times in person and that he did not perceive that Petitioner had any difficulty understanding him or communicating with him during the course of those conversations.

Mr. Leiden further testified that he attempted to negotiate other plea deals for Petitioner on several occasions, but Petitioner refused to accept any plea offer or authorize Mr. Leiden to engage in plea negotiations.[8] As noted above, Petitioner rejected the first plea deal offered before the government filed the superceding indictment. The second plea deal, offered after the filing of the superceding indictment, would have allowed Petitioner to plead guilty the possession count (count 1) in exchange for dismissal of the conspiracy count (count 2).[9] Curiously, this is the same plea deal Petitioner now alleges Mr.

_____

[7]As noted in Mr. Leiden's June 12, 2006 letter to Petitioner, "As we have discussed several times previously, if you are convicted under Count One, . . . you would be facing a mandatory term of life imprisonment." Pet'r's Ex. 10. Petitioner evidently received this letter because Mr. Leiden testified that he received a reply letter from Petitioner posing questions about other information contained in the June 12th letter.

[8]As noted below, Petitioner admitted in his testimony that he had refused to accept any plea deal because it would have required him to "tell on" other people, and he asserts that he did not have any information to tell.

[9]This plea deal is documented in a letter written by Mr. Leiden to Petitioner on April 6, 2006:

> The government had allowed you the opportunity to plead guilty to one count of cocaine possession, with intent to distribute. Based on your criminal history, you would have faced a minimum term of imprisonment of ten years.

10

Leiden was never able to obtain. In any event, Petitioner also rejected this plea offer.

Following Petitioner's rejection of the second plea offer, the government offered yet another plea deal that would have allowed Petitioner to plead to the conspiracy count, with a 10-year minimum sentence. (See doc. no. 10., Ex. C). Mr. Leiden informed Petitioner of this offer, enclosed a copy of the original plea agreement, and requested that Petitioner contact him by mail or phone if he wished "to reconsider a plea." (Id.). Petitioner did not respond. (Id., Ex. D) ("You had requested the opportunity to discuss [the plea offer] with your mother before you got back to me. I have not heard from either of you."). While the conspiracy count would not have been dismissed as part of this second plea offer, Petitioner would still have faced a lesser sentence had he accepted. Once again, as Mr. Leiden testified, Petitioner refused to accept this plea deal.

Mr. Leiden further stated that even following this sequence of events, he attempted to persuade Petitioner to accept a plea and offered to meet with the government to try to obtain yet another plea deal after the enhanced sentencing information had been filed. Mr. Leiden's testimony to this effect is documented in a letter dated August 28, 2006, in which Mr. Leiden informed Petitioner:

> There is not a plea deal on the table. However, I still believe that Joe Huff [counsel for co-defendant Worthen] and myself could meet with the United States Attorney and persuade him to agree to allow you to each plead guilty to the possession count. . . . I hope that you will seriously consider

> You would have been permitted a potential reduction in that sentence for cooperation with the government and other ongoing investigations. You rejected this plea offer.

(Doc. no. 10, Ex. A).

authorizing me to contact the United States Attorney about a plea, and let me know in the very near future.

(Id., Ex. F, p. 2). Mr. Leiden maintained that Petitioner never authorized any such meeting and refused to accept any sort of plea.

In contrast, Petitioner testified that Mr. Leiden never told him in person that he faced a mandatory life sentence (or explained the nature of a mandatory sentence) if convicted at trial and that he would have accepted the government's plea offers had he known the nature of the sentence he faced. However, Petitioner testified at the same time that he did not want to accept any plea offer because it would have required him to "tell on" other people, and he did not have any information to tell, even though he admitted that he participated in the conduct leading to his conviction with his co-defendant, Mr. Worthen.

Given the conflict in testimony, the threshold issue in resolving these claims is one of credibility. Generally, when the testimony conflicts, the Court, as fact finder and "ultimate judge of the credibility and demeanor of witnesses," must believe one witness over the other. McCoy v. Newsome, 953 F.2d 1252, 1262 (11th Cir. 1992) (*per curiam*). More specifically, the determination of the credibility of a testifying attorney during an evidentiary hearing on a claim of ineffective assistance of counsel is a matter within the Court's discretion. See Carr v. Schofield, 364 F.3d 1246, 1264-65 (11th Cir. 2004), *cert. denied*, 543 U.S. 1037 (2004).

Here, the Court specifically credits the testimony of Mr. Leiden over that of Petitioner. Mr. Leiden, who has been a member of the bar of the Southern District of Georgia for nearly sixteen years, is well-known to the Court. He has demonstrated himself

12

to be an ethical, able, and zealous advocate for the clients he has been appointed to represent. The Court finds incredible any notion that Mr. Leiden would fail to inform Petitioner of the nature of his sentence or fail to attempt to negotiate a more favorable outcome for his client and then lie to this Court about his communications with Petitioner, especially considering that Mr. Leiden's testimony is substantially corroborated by numerous letters he wrote to Petitioner.

In making this credibility determination, the Court also notes that Petitioner's testimony suffers from multiple contradictions that undermine his credibility. First, despite Petitioner's statement that he would have accepted a plea offer had he known he faced a mandatory life sentence, Petitioner maintained at the same time that he had previously rejected all plea offers because he would have been required to cooperate with the government and he did not have any information to provide. The Court also finds this second assertion regarding his alleged lack of information suspect, given that Petitioner was charged with conspiracy and tried with his co-defendant. For these reasons, the Court credits the testimony of Mr. Leiden over that of Petitioner, and any attempt by Petitioner to besmirch Mr. Leiden's character fails.

In sum, Petitioner's claim that counsel was ineffective for failing to advise him that his prior felony drug convictions could result in a mandatory life sentence is refuted by Mr. Leiden's testimony, as well as the written correspondence between Mr. Leiden and Petitioner. Indeed, the record conclusively establishes that Petitioner was informed on multiple occasions of the possibility that he could receive a maximum sentence of life imprisonment. Furthermore, almost immediately following the filing of the enhanced

13

sentencing information, Mr. Leiden informed Petitioner that a life sentence would be mandatory if he was convicted at trial. Accordingly, this claim of ineffective assistance of counsel fails.

As to Petitioner's claim that counsel was ineffective for failing to obtain a lesser sentence and dismissal of count 1 of the indictment, the record demonstrates that the government made several plea offers, which were communicated to Petitioner by Mr. Leiden. All of these offers would have resulted in a lesser sentence, and the second offer in particular provided for dismissal of the first count of the indictment. However, Petitioner rejected every plea deal that was offered. Furthermore, despite Petitioner's refusal to engage in plea negotiations, Mr. Leiden persisted in his efforts to negotiate a shorter sentence, all of which Petitioner thwarted. Simply stated, Petitioner controlled his own fate, and the fact that he received the sentence that he did cannot be attributed to any failure or error on the part Mr. Leiden. In sum, it seems incredible that Petitioner would argue that counsel was ineffective in these respects when he resisted all of counsel's efforts to help him. Accordingly, this claim of ineffective assistance of counsel must also fail.

### 2. Alleged Failure to Object to Trial Testimony

Turning to Petitioner's remaining claims not addressed at the hearing, Ground 2 of the § 2255 motion alleges that Mr. Leiden was ineffective for failing to object at trial to the proffer testimony of Petitioner's co-defendant that referenced drug activities, which Petitioner alleges did not involve him. (See doc. no. 2, pp. 5-6). Petitioner is correct in asserting that Mr. Leiden never objected to this evidence at trial; however, Mr. Leiden did

request and receive a limiting instruction as to this evidence. <u>Artis</u>, 261 Fed. App'x at 178 n.1. That said, the underlying argument concerning the admissibility of the proffer testimony was raised on direct appeal and rejected by the Eleventh Circuit.[10] Indeed, it was specifically argued on direct appeal that the district court erred in allowing Special Agent Marbert to testify in the government's rebuttal case as to statements Petitioner's co-defendant had made regarding the individuals from whom he had purchased drugs. <u>Id.</u> at 177. The Eleventh Circuit rejected this argument, finding as follows:

> The proffer letter provided that all discussions would be governed by "Rule 410 of the Federal Rules of Evidence, as modified herein." The letter also provided that no statements made by Worthen or his counsel could be used in the Government's case-in-chief; however, such statements could be used "for the purpose of cross-examination, impeachment, and rebuttal should [Worthen] testify at any proceeding in any manner contrary to this proffer." All of the testimony by Agent Marbert that Worthen points to as violating the terms of the proffer agreement plainly impeached Worthen's trial testimony. Worthen stated, while being cross-examined, that he did not sell cocaine and, pursuant to the proffer agreement, the Government was entitled to use statements made by Worthen during the proffer "for the purpose of cross-examination, impeachment, and rebuttal" in the event that statements made during the proffer were inconsistent with the statement "I don't sell cocaine." The admission of Worthen's proffer letter stating that he had purchased large quantities of cocaine and from whom he had purchased the cocaine, served to discredit, and therefore impeach, his trial testimony that he did not sell cocaine.

<u>Id.</u> at 178. Thus, the Eleventh Circuit concluded that there was no error in admitting the proffer testimony of Petitioner's co-defendant, and therefore it cannot be said that counsel erred in failing to object to this testimony or that Petitioner suffered any prejudice as a result.

---

[10]Though the Eleventh Circuit discussed this issue in terms of Petitioner's co-defendant Worthen, the appellate court specifically noted that Petitioner had raised the same argument on appeal and that Petitioner's argument was rejected for the same reasons Worthen's was rejected, as discussed more fully below. <u>Artis</u>, 266 Fed. App'x at 178 n.1.

While Petitioner may disagree with the Eleventh Circuit's rejection of this argument, it is not for this Court to disturb the findings of the appellate court. Accordingly, this claim of ineffective assistance of counsel must fail.

### 3. Alleged Failure to Object to Jury Instructions

Ground 3 of Petitioner's § 2255 motion claims that Mr. Leiden was ineffective for failing to object to the trial court's jury instructions, specifically that (1) the instructions were so broadly stated that the conduct of Petitioner's co-defendant could be imputed to Petitioner, and (2) the jury instruction regarding computation of the drug amount was incorrect.

As to Petitioner's first contention, the trial court's instructions to the jury included the caveat that the jurors "must give separate consideration to each of the defendants and to each count of the indictment." CR 106-031, doc. no. 149, p. 13. Judge Bowen also instructed the jury that "mere presence" or the "mere fact that certain persons may have associated with each other . . . does not, standing alone, establish proof of conspiracy," and that "a person who has no knowledge of conspiracy, but who happens to act in a way which advances some purpose of one, does not thereby become a conspirator." Id., Att. 1, p. 16. In addition, the jury was told that "before any Defendant can be held criminally responsible for the conduct of others it is necessary that the Defendant willfully associate in some way with the crime, and willfully participate[] in it." Id. at 19. Finally, Judge Bowen cautioned the jury, using the Eleventh Circuit's Pattern Jury Instruction (Caution-Punishment) that:

> Each charge, and the evidence pertaining to it, should be considered
> separately. Also, the case of each Defendant should be considered separately
> and individually. The fact that you may find one or more of the Defendants
> guilty or not guilty of the offenses charged should not affect your verdict as
> to any other offense or any other Defendant.

16

Id. at 23. Such instructions, coupled with the special verdict form requiring separate, individualized findings as to Petitioner and his co-defendant, see id., doc. no. 125, insured that the jury was properly informed that conduct of Petitioner's co-defendant would not be imputed to him. Thus, the Court finds no error in the instructions given to the jury, and Mr. Leiden need not have objected to the jury charges. Even assuming *arguendo* that Mr. Leiden should have done so, no prejudice inured to Petitioner, as Judge Bowen more than adequately explained that the conduct of each co-defendant could not and should not be imputed to the other. Accordingly, this claim of ineffective assistance of counsel must fail.

Regarding the second allegedly incorrect jury instruction, Petitioner contends that Mr. Leiden was ineffective for failing to object to the instruction that, for purposes of determining the quantity of drugs involved in the conspiracy, the jury could consider Petitioner's involvement in drug transactions outside the scope of the conspiracy, or in Petitioner's words "outside the dates of the charging indictment." (Doc. no. 2, p. 12). In response to the jury's question regarding computation of the quantity of drugs involved in the conspiracy over a period of time, Judge Bowen gave the following explanation:

> In determining the amount of controlled substances that are, if at all, attributable to the defendants during the course of the conspiracy we certainly look at the time frame covered by the allegations of the conspiracy here . . . June 1, 2005 until January 12, 2006, but we can't just look at the time period. If a defendant has participated willfully in a conspiracy we need to look at the amount of controlled substances with which that defendant has involved himself. By his willful participation in the conspiracy during the course of the conspiracy you must look to determine the amount of controlled substances which is properly proven beyond a reasonable doubt as being attributable to that defendant occurring *during the course of the conspiracy*.

CR 106-031, doc. no. 149, p. 238 (emphasis added). This excerpt demonstrates that while

Judge Bowen may have referenced a time period outside that alleged in the indictment, he properly informed the jury that it must determine the amount of drugs that was proven beyond a reasonable doubt as attributable to Petitioner during the course of the conspiracy.[11] Because Petitioner cannot show that Mr. Leiden erred in failing to object to this second jury instruction or demonstrate the prejudiced he has suffered as a result of this alleged error, this claim for ineffective assistance of counsel claim fails as well.

### 4.    Alleged Failure to Challenge Correction to Transcript

Ground 6 of Petitioner's § 2255 motion argues that Mr. Leiden erred in failing to challenge on appeal a correction made to the trial court transcript. The record demonstrates otherwise. On appeal, Petitioner raised this issue as part of his challenge to the sufficiency of the evidence that the original trial transcript reflected Agent Tutt's testimony that he (the agent) had sold Petitioner only four grams of cocaine hydrochloride, not four kilograms. Artis, 261 Fed. App'x at 180-81. However, a corrected trial transcript was filed prior to the Eleventh Circuit's decision, which demonstrated that Agent Tutt testified that he had in fact sold four kilograms of cocaine hydrochloride to Petitioner. This correction was noted in the appellate court's decision, which also noted that "it was obvious from the context" that Agent Tutt described selling four kilograms of cocaine to Petitioner. Id. at 181.

---

[11]The Court also notes that the superceding indictment charges Petitioner with committing narcotics offenses "*on or about* June 1, 2005, and continuing until *on or about* January 12, 2006." CR 106-031, doc. no. 52, p. 1 (emphasis added). The Eleventh Circuit has noted in other circumstances that use of similar approximating language is not prejudicial and cures any possible variance between the dates alleged in the indictment and dates proven at trial. See United States v. Young, 39 F.3d 1561, 1567 (11th Cir. 1994); United States v. Champion, 813 F.2d 1154, 1158 (11th Cir. 1987).

This record demonstrates that Mr. Leiden did in fact raise the trial transcript issue on appeal as part of the challenge to the sufficiency of the evidence, even though the issue was decided adversely to Petitioner. Thus, it cannot be said that counsel was ineffective for failing to raise an issue on appeal when the issue was in fact raised. Even though Petitioner may disagree with the Eleventh Circuit's ruling on this issue, this Court will not disturb the appellate court's findings in these collateral proceedings. Accordingly, this claim for ineffective assistance of counsel also fails.

### 5.    Alleged Failure to Challenge Jury Instructions on Appeal

Finally, in Ground 4 of his § 2255 motion, Petitioner argues that Mr. Leiden was ineffective for failing to challenge the trial court's jury instructions on appeal, despite his request that counsel do so. (Doc. no. 2, p. 12). In analyzing these claims, the Court is guided by the general principle that Petitioner does not have a right to have every possible argument raised on appeal. Indeed, it is up to appellate counsel to "'winnow out' weaker arguments," Jones v. Barnes, 463 U.S. 745, 751-52 (1983), and appellate counsel is not ineffective for failing to raise a frivolous argument on appeal, Winfield, 960 F.2d at 974.

In addition to those guiding principles, the correspondence between Mr. Leiden and Petitioner demonstrates that this claim lacks merit. First, Petitioner wrote to counsel requesting that certain issues be raised on appeal only *after* Mr. Leiden had filed the appeal brief. (Doc. no. 10, Ex. M). Mr. Leiden responded to Petitioner's request on August 6, 2007, by informing him that space was limited and that he had focused on the arguments that, in his professional opinion, had the greatest chance of success. (Id., Ex. N). Notably, Mr. Leiden included a copy of the appeal brief to Petitioner in his August 6th letter, and upon

receipt of the brief, Petitioner expressed to Mr. Leiden that he was "very pleased and most appreciative of both the work you and your staff have put forth in my appeal . . . ." (Id., Ex. O). When Petitioner again wrote to counsel suggesting issues that he thought ought to be included in the appellate brief, (see id., Exs. P, Q), Mr. Leiden responded by informing him, once again, that the brief had already been submitted and that he "chose the strongest arguments regarding proof of the [cocaine] amount, due to space limitation in the brief." (Id., Ex. R).

Of course, now that his conviction has been affirmed by the Eleventh Circuit and Mr. Leiden's arguments have been rejected, Petitioner argues that he is not pleased with appellate counsel's performance and that Mr. Leiden was ineffective for failing to raise certain issues on appeal. As detailed above, Petitioner did not even suggest issues to be raised on appeal until after the appeal brief had been filed. Furthermore, Mr. Leiden explained to Petitioner in multiple letters that he had presented what he considered, in his professional judgment, to be the strongest arguments and that space limitations precluded him from raising every possible issue. More importantly, Petitioner has failed to show that any of the jury instructions given were erroneous or that the arguments he contends should have been presented to the Eleventh Circuit would have changed the outcome. He has thus failed to carry his burden of demonstrating that any prejudice resulted to him as a result of this alleged error by Mr. Leiden, and this claim must also fail.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that

Petitioner's § 2255 motion be **DENIED**, that this civil action be **CLOSED**, and that a final

judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this ___ day of July, 2009, at Augusta,

Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE